**WHITE v. NEW ORLEANS LAKE SHORE LAND CO. et al.**

(Circuit Court of Appeals, Fifth Circuit. January 18, 1921.)

No. 3529.

1. **Trusts ☞210—Trustee to convey title held not liable for breach of vendor's agreement.**

Where a land company had conveyed its land to a trust company by recorded act of sale, expressly showing the conveyance to be in trust for the purposes specified in the resolutions of the land company, and the contract for selling the land to a purchaser showed that it was held by the trust company in trust, the purchaser had notice that the trust company was a trustee only, and cannot hold it liable for payments made on the contract before rescission for the land company's breach of its contract.

2. **Trusts ☞210—Illegality of trust does not make trustee liable for breach of vendor's contract.**

In a suit by a purchaser of land to recover from the trust company, which held the legal title to the land in trust for a land company, the payments made by the purchaser before rescission for the land company's breach of contract, it is immaterial whether the trust company was authorized to accept the trust in controversy, since, even if that trust were illegal, it could not make the trust company liable for the land company's breach.

3. **Trusts ☞210—Evidence held not to show contract was for benefit of trustee.**

In a suit by a purchaser of land, who had rescinded his contract for the vendor's breach of agreement to grow a commercial orange orchard thereon, evidence *held* insufficient to show that the trust company, which held legal title to the land, was making the sale for its own interest, so as to be liable for the sums already paid.

In Error to the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit by Andrew D. White against the New Orleans Lake Shore Land Company, the Hibernia Bank & Trust Company, and others. Judgment for plaintiff against the Land Company, but not against the Bank & Trust Company, and plaintiff brings error. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Robert H. Marr, of New Orleans, La. (Hollett, Sauter & Hollett, of Chicago, Ill., on the brief), for plaintiff in error.

Abraham Goldberg, H. Generes Dufour, J. Blanc Monroe, Monte M. Lemann, and Percy S. Benedict, all of New Orleans, La., for defendants in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. The petitioner, Andrew D. White, brought suit against the New Orleans Lake Shore Land Company (hereinafter styled the Land Company) and the Hibernia Bank & Trust Company (hereinafter styled the Trust Company), to annul a contract for the purchase of certain property, and to recover from said Trust Company the sum of $7,200, with interest, and for the surrender of $15,900 of unpaid notes given as a part of the purchase price of said land, or in the alternative to recover the sum of $15,900, with interest.

The Land Company originally owned a large tract of land near the city of New Orleans, which it was developing and selling in five-acre tracts, with orange groves planted thereon and a residence lot of 4,000 square feet. It had spent previously large sums of money in draining and improving said land, and had made an issue of $1,500,000 first-mortgage bonds secured by mortgages to said Trust Company as trustee. These bonds had been used as a pledge to secure a loan of $500,-000 made by the Trust Company; said loan being also secured by the individual guaranty of a number of wealthy individuals.

To carry out the plan of selling off these five-acre groves, and said building sites, it was decided to put the title to said property in the name of said Trust Company as trustee. A resolution of the Land Company was passed, authorizing the conveyance of said property to said Trust Company, as trustee, reciting the desire to convey the property to the Trust Company by outright transfer, without the deed of record showing any condition or restrictions whatever, nevertheless the said property to be actually held in trust by said Trust Company, and authorized the president to convey said property and to arrange for the trusteeship, which should provide for the cancellation of the outstanding $1,500,000 mortgage, the Trust Company to hold the property now conveyed as security for existing and future debts; that the trustee would make titles without warranty, except against its own acts, but with subrogation of warranty against the Land Company and previous vendors to the purchasers of said groves and building sites, when the purchaser has fully paid his purchase price; that the Trust Company will accept purchase contracts as turned in and hold same as trustee, and at once indorse all checks and notes in its favor without recourse, and turn them over to the Land Company, except that $400 of each set of notes should be retained, and as paid should be applied to any indebtedness of the Land Company to the Trust Company. All payments made on each unit over and above the $400 shall become the property of the Land Company for its own uses, provided all payments shall be made to the Trust Company and utilized only for the development and benefit of the remaining property.

The act of sale was executed on March 24, 1914, and recited that

it was made under and by virtue of said resolutions, a copy of which was recited to be annexed to and made a part of said act of sale. It was made to said Trust Company as trustee:

"To have and to hold the above-described property unto the said Hibernia Bank & Trust Company, as trustee, under the terms of a trust agreement between the parties."

In reciting the existence of said mortgage securing said $1,500,000 of bonds, said act recites:

"Which mortgage the Hibernia Bank & Trust Company, trustee, is obligated by the trust agreement aforesaid to cancel and erase."

In the fall of 1914, said debt of $500,000 was, on demand of said Trust Company, paid by said individual guarantors. On July 31 and August 1, 1916, said White entered into six contracts to purchase six units (each unit consisting of five acres for a grove and a building site of 4,000 square feet). Said agreements were each in the form of a letter addressed to the New Orleans Lake Shore Land Company, the material parts of which are as follows:

"I hereby agree to purchase, and do purchase, subject to your acceptance: * * *

"1. Five acres of land already planted or to be planted by you during the planting season of 1916–17, comprising a five-acre commercial orange and grape fruit grove, planted seventy trees to the acre, which you are to take care of and cultivate for me for a period of five years without additional cost. You are to deliver to me at the expiration of five years, a five-acre commercial orange and grape fruit grove, each acre thereof containing not less than seventy trees. * * *

"2. One residence lot in size 4,000 square feet. * * *

"For value received and in consideration of your promise and agreement to have transferred and conveyed unto me by warranty deed all of the foregoing described property, such title to be conveyed to me upon full payment of the purchase price herein agreed, I hereby promise and agree to pay to the order of the trustee, namely, the Hibernia Bank & Trust Company of New Orleans, Louisiana, as full purchase price, the sum of thirty-eight hundred and fifty dollars.

"Herewith I hand you the first payment of three hundred and fifty dollars, payable to the Hibernia Bank & Trust Company of New Orleans, and the balance of the purchase price, namely, $3,500, I promise and agree to pay to the Hibernia Bank & Trust Company of New Orleans, and I herewith give my series of notes for the said balance, payable to the Hibernia Bank & Trust Company of New Orleans. * * *

"It is further hereby agreed and understood that the parties hereto shall not be bound by any statements, agreements, or representations not herein contained, and no representative of the New Orleans Lake Shore Land Company or of the Hibernia Bank & Trust Company is authorized to change or alter any of the terms of this agreement. * * * "

Said letters were indorsed:

"Accepted: New Orleans Lake Shore Land Company, M. L. Morrison, Acct."
"Accepted: Hibernia Bank & Trust Company, L. V. De Gruy, Asst. Trust Officer."
"Accepted: The Louisiana Company, C. W. Marsh, Gen'l Dir."

The sale had been negotiated by said Louisiana Company as agent, and it was entitled to a commission from said purchase price. The cash and notes called for by each contract were sent to the Trust Company, which acknowledged the same by letter, stating:

"We beg to acknowledge receipt through the Louisiana Company of agreement covering your purchase from the New Orleans Lake Shore Land Company of property in the Ninth ward of the city of New Orleans, which the Hibernia Bank & Trust Company holds as trustee, together with your check and notes to the amount of the purchase price, namely, $3,850.00.

"Inclosed please find a copy of the agreement, the original of which was signed by yourself, and fully accepted by the Louisiana Company, the New Orleans Lake Shore Land Company, and the Hibernia Bank & Trust Company. The original of said agreement is in the custody of this institution, as trustee, and the property will be conveyed to you by the Hibernia Bank & Trust Company when the terms of the agreement are fulfilled, as recited in said original agreement and the copy accompanying. * * *"

The evidence shows that all of said cash and notes were turned over to said Land Company, the trustee not retaining any part thereof. The Land Company appears to have planted said five-acre tract as provided by said letter and to have expended very large sums of money on the project. Very severe winters, which occurred in 1916, and thereafter, killed many trees and destroyed the project, and resulted in the receivership of the Land Company in 1918. The plaintiff had paid $7,200 in cash and has unpaid notes aggregating $15,900.

The suit against the Trust Company is based on the averments that, the Land Company being indebted to it in the sum of $500,000, and having no assets except this land, which was too large a tract to find a single purchaser, the Trust Company, in order to collect its debt, devised the plan of having the property cut up into five-acre groves, and, so that no sale might be made without the Trust Company's consent and participation in the deed of sale, said Land Company conveyed the title to the Trust Company; that it was beyond the powers of the Trust Company to deal in, and exploit, real estate, and that it became therefore legally necessary to continue the organization of the Land Company and hold itself out as trustee; that as the Trust Company cannot carry out its agreement to convey to petitioner a five-acre commercial orange and grape fruit grove, he is entitled to have the contract annulled and to have the Trust Company refund the money paid, and return the unpaid notes, or in the alternative he should have a judgment for the amount of said notes.

The proof failed to show that the plan was devised by the Trust Company, but appears to have been entirely a plan of the Land Company and prosecuted for its benefit. At the conclusion of the testimony counsel for each party moved the court to instruct a verdict for his client. After hearing argument the court overruled plaintiff's motion, so far as the Trust Company was concerned, and sustained the motion to instruct a verdict in its favor. He granted plaintiff's motion to direct a verdict in his favor against the Land Company and its receiver. Verdict and judgment were entered accordingly. The plaintiff has sued out this writ of error to set aside the judgment in favor of said Trust Company.

[1] It is urged in this case that the relation of the Trust Company to this property was such that by the contract, evidenced by the letter addressed by plaintiff to the Land Company, it is bound by the undertaking to produce and sell a commercial grove, and that, the same not

having been furnished, it is liable to reimburse the plaintiff on a rescission of the contract. The letters evidencing the contract are addressed to the Land Company alone. The agreements as to planting and caring for the groves are with the Land Company. The letter refers to the Trust Company as trustee, to whose order the purchaser promises and agrees to pay the purchase price.

The receipt of the Trust Company to the plaintiff of the contract so made recites that the contract of purchase is made by plaintiff with the Land Company of certain property which the Trust Company holds as trustee, that the original agreement is held by it as trustee, and the property will be conveyed by the Trust Company when the terms of the agreement are fulfilled as recited in said agreement. At that time the title to the land was in the Trust Company under a recorded act of sale reciting that it held it "as trustee under the terms of a trust agreement between the parties."

The terms of the trust were set out in the resolutions, which were referred to in the act of sale as a part thereof, and attached thereto, the original of said act of sale being among the records of the notary public who had passed the same in New Orleans, and the record in the conveyance office recited that the act of sale was authorized by the resolutions attached thereto as a part thereof. It also recited that the Trust Company held as trustee "under the terms of a trust agreement between the parties." This would seem to fully charge plaintiff with notice of the trust relation of the Trust Company, especially where the plaintiff dealt with it as a trustee of the property. Schneidau v. New Orleans Land Co., 132 La. 264, 61 South. 225.

[2] It is urged that the laws of Louisiana prohibit the creation of a trust such as is set forth in this act of sale. Whether this is or is not a sound position is not material in this case. The question here is simply: Did the Trust Company bind itself to perform the executory agreements evidenced by the letters from White to the Land Company as to planting and caring for the grove called for in said letters, or did it only agree to convey the land, the title to which it held, on account of the Land Company, and did it receive the consideration only for the purpose of transmission of the cash and notes to the Land Company?

We think it is quite evident, from the letters, that the entire contract was between White and the Land Company; that the Trust Company was understood to accept the agreement solely to signify that it would convey the land when the contract between the Land Company and White was fulfilled.

[3] The petition in the case avers that the contract was made with the Land Company, because it was recognized that the Trust Company had no power to enter into or bind itself to such an undertaking, and the theory of its liability is based on the allegation that the undertaking was devised by the Trust Company for its own benefit, using the Land Company only as its agency. This theory was demonstrated to be unfounded, the proof showing without dispute that the Land Company, through the Louisiana Company, had devised the plan for its own benefit, that it was carrying it out in good faith, and that the in-

debtedness to the Trust Company had been paid off by the individual guarantors before White agreed to purchase.

It appeared that sums in excess of the entire proceeds of the sales made had been invested in the improvement of the Land Company's property. It was conceded on the trial that no question of good faith was involved in the transaction, and the proof necessitates the concession.

We therefore agree with the court below that the Hibernia Bank & Trust Company was not liable, and the judgment in its favor is affirmed.