JAMES G. TUCKER, Respondent, v. HIBERNIA BANK & TRUST COMPANY, a Corporation, Appellant.

St. Louis Court of Appeals. Opinion Filed May 8, 1923.

1. **INSTRUCTIONS: Cannot be Broader than the Pleadings: Must be Within Perview Both of the Pleadings and Evidence.** An instruction cannot be broader than the pleadings, nor broader than the facts proven; it must be within the purview both of the pleadings and the evidence.

2. **BANKS AND BANKING: Contracts: Guaranty: Ultra Vires: Bank Not Liable.** Where a bank cannot be held upon its *ultra vires* contract of guaranty of a land contract, assuming such a contract to have been made, same concededly being beyond the scope of the bank's business, it cannot be held liable because of false representations made by one of its officers that such *ultra vires* contract had been executed by the bank.

Appeal from the Circuit Court of the City of St. Louis.
—*Hon. Franklin Miller*, Judge.

REVERSED.

*Sears Lehmann* and *Lehmann & Lehmann* for appellant.

*Farrar, Goldberg & Dufour* and *McCloskey* and *Benedict,* of Counsel.

(1)  The petition alleged defendant in writing guaranteed the contract between plaintiff and the New Orleans Lake Shore Land Company.  The instruction for plaintiff submitted the issue that defendant did not make such a guarantee but falsely represented it did.  An instruction must not be broader than the petition and must not submit an issue not raised therein whatever the evidence may be.  Young v. Dunlap, 195 Mo. App. 119, 190 S. W. 1041; Simms v. Dunham, 203 S. W. 652; Lorton v. Trail, 216 S. W. 54; Quinn v. Van Raalte, 205 S. W. 59, 276 Mo. 71; Scrivner v. Mo. Pac., 260 Mo. 421; Gately Outfitting Co. v. Vinson, 182 S. W. 133; Hufft v. Railroad, 222 Mo. 286; Degonia v. Railroad, 224 Mo. 564; Black v. Railroad, 217 Mo. 672; Beave v. Railroad, 212 Mo. 331; Northam v. United Rys. Co., 176 S. W. 227; Ward v. Harvey, 182 S. W. 105; Todd v. Mo. Pac., 126 Mo. App. 684.  Furthermore, the petition is in contract and the instruction submits an issue in tort. (2)  The petition and especially count 2 thereof on which the case went to the jury failed to state a cause of action either *ex delicto* or *ex contractu.*  (a)  It fails to state a cause of action *ex delicto* for fraud and deceit because it alleges that the representations made by defendant were or should have been known by defendant in the exercise of ordinary care to be false.  It thus fails to alleged *scienter* a necessary allegation in a tort action for fraud and deceit.  ''Fraud cannot be predicated upon representations made negligently.''  Walker v. Martin, 8 Mo. App. 560; Anstee v. Ober, 26 Mo. App. 665; Walsh v. Morse, 80 Mo. 568; Bank of Atchison County v. Byers, 139 Mo. 627; Remmers v. Remmers, 217 Mo.

541; Edwards v. Noel, 88 Mo. App. 434; Ray County Bank v. Hutton, 224 Mo. 42; McCauley v. Brown, 99 Mo. App. 625; 26 Corpus Juris 1129 and note 84, citing hundreds of cases. (b) Count 2 is in fact *ex contractu*. It fails to state a cause of action *ex contractu*. The trial court so ruled. The United States Court of Appeals for the Fifth Circuit has so ruled on the identical contract involved. White v. New Orleans Lake Shore Land Co. and this defendant, 269 Fed. 937. (3) In the absence of a showing of error it is presumed that the rulings of the trial court are correct. Wentzville Tobacco Co. v. Wallace, 123 Mo. 662; Springfield Grocer Co. v. Walton, 95 Mo. App. 526. (4) If the petition does state a cause of action for fraud and deceit in count 2, it must be supported by competent evidence. No connection being shown between defendant and the Louisiana Company the hundreds of pages of testimony as to statements made oral and written by agents and salesmen of the Louisiana Company not brought home to defendant were mere hearsay. The court erred in admitting this evidence over objection of defendant and erred in failing to instruct at the request of defendant the jury to disregard it. (5) If count 2 did state a cause of action for fraud and deceit, the only competent representations were those made to plaintiff. Hundreds of pages of representations made to others than plaintiff were admitted over defendant's objection. As authority for this and this point only we cite leading counsel for plaintiff from the record in this case. "The only question here in issue is what he said to Judge Tucker" (the plaintiff). (6) It was an abuse of discretion not to allow defendant to file an amended answer. Count 2 of the petition certainly could be construed to be *ex contractu*, and defendant was surprised when counsel for the plaintiff and the court construed it to be *ex delicto*.

*Barker, Britton, Watkins & Stocker, Leahy, Saunders & Walther* and *Thomas E. Killeen, Jr.* for respondent.

(1)   Assuming there was a variance between the allegations in the petition, on the one hand, and the proof and instructions on the other, defendant, to avail itself of such a variance, should have filed an affidavit in accordance with the statutes.   Secs. 1272, 1273, R. S. 1919; Bank v. Phillips, 179 Mo. App. 488; Thomas v. Bambrick Bros. Construction Co., 189 Mo. App. 623; Mekos v. Frickey, 159 Mo. App. 631; Gaty v. Sack, 119 Mo. App. 470; Bingham v. Tinsley, 149 Mo. App. 468; Olmstead v. Smith, 87 Mo. 602; Meyer v. Chambers, 68 Mo. 626; Faris v. Thaw, 72 Mo. 446; Brown v. Railroad Co. 31 Mo. App. 661; Mellor v. Railway Co. 105 Mo. 455; Fisher & Co. v. Realty Co., 159 Mo. 562; Ely v. Porter, 58 Mo. 158; Newton v. Harvey, 202 S. W. 249; Wolf v. Lauman, 34 Mo. 575; Lindell v. Fisher, 48 Mo. App. 449; Clydesdale v. Bennett, 52 Mo. App. 333; White v. Insurance Co. 97 Mo. App. 590; Pancoast v. Fixture Co., 60 Mo. App. 57; Harrison v. Lakeman, 189 Mo. 581; Brown v. Railway Co., 50 Mo. 461.   (2)   If defendant was surprised by plaintiff's interpretation of the second count and the court's ruling thereon, it should have filed an affidavit in accordance with the terms of the statutes. Exceptions were not saved by defendant to the court's ruling on the admission of evidence (authorities cited under point 1).   (3)   Defendant had stated and represented that it had in writing guaranteed the fulfillment of the contract with the orange grove purchasers, as shown by many witnesses, and plaintiff expected to secure the production of the contract itself.   Defendant at all times, according to its evidence in this record, knew there was no such contract, notwithstanding the statements made by officers of defendant company to plaintiff and many others.   The petition showed the plaintiff thought there was a contract of guaranty and relied upon it.   The defendant should not have been "misled" by the proof, as its own witnesses as well as the statements of its lawyers undertook to disprove the execution of the contract.   (4)   The second count states a cause

of action and it is one *ex delicto*. If the petition was defective, it was cured by verdict. Secs. 1257, 1550, R. S. 1919; Richardson v. Farmer et al., 26 Mo. 35; Bank of New Orleans v. Scalzo, 127 Mo. 164; Ball v. Grismore, 239 S. W. 524; Heman v. Allen, 156 Mo. 534; Emmert v. Meyer, 65 Mo. App. 609; 31 Cyc. 68-84. (5) The courts permit a minute research and a wide one in pursuit of fraud. The trial court allowed plaintiff to show the *modus operandi* in the selling of the groves, and the evidence connects the defendant company with the fraudulent plan. The evidence of the fraudulent enterprise was received, in many instances, without objection by defendant, and frequently exceptions were not saved to the court's rulings when objections were made. Defendant's counsel inquired of witnesses on the same propositions. Colloquy of counsel during the trial does not bind their clients. Bank v. Hutton, 224 Mo. 22; Ball v. Grismore, 339 S. W. 529. (6) Defendant was endeavoring to and did collect a debt through the orange grove promotion, and the defense of *ultra vires* does not apply. The defendant is estopped from pleading *ultra vires*. Interstate Trust & Banking Co. v. Reynolds, 127 La. 193; Atkins v. Shreveport & R. River Valley R. Co., 106 La. 568; Lyon Bros. & Co. v. Stern, Kenny & Boze, 110 La. 473; Canal & C. R. Co. v. St. Charles Street Ry. Co., 44 La. Ann. 1069; Gair & Co. v. Columbia Rice Packing Co., 124 La. 193; St. Joseph Fire & Marine Ins. Co. v. Hauck, 71 Mo. 465; Cass County v. Mercantile Town Mutual Ins. Co., 188 Mo. 1; First National Bank v. Guardian Trust Co., 187 Mo. 494; Hanlon Millinery Co. v. Mississippi Valley Trust Co., 251 Mo. 553; Schlitz Brewing Co. v. Missouri Poultry & Game Co., 229 S. W. 813; 14a C. J. 582; Marshall on Private Corps. (1902), sec. 86; L. R. A. 1917A, p. 913. (7) Corporations cannot escape liability for torts on the ground of *ultra vires* acts. 14-a Corpus Juris, 769; Grand Forks First National Bank v. Anderson, 172 U. S. 593; First National Bank of Carlisle, Pa., v. Graham, 100 U. S.

699; Rabassa v. Orlean Navigation Co., 5 La. 461; Start v. National Newspaper Ass'n, 222 S. W. 870; Alexander v. Rielfe, 74 Mo. 495; Sherman v. Commercial Printing Co., 29 Mo. App. 38. (8) The trial court did not abuse its discretion in not allowing the defendant to file an amended petition during the trial. The petition was filed nearly two years before the trial, and defendant had ample time to examine it. Meanwhile defendants knew all the facts in reference to its defense that the contract of guaranty had not been made and Judge Tucker's deposition had been taken a month before the trial. Morgan v. Metropolitan Ry. Co., 51 Mo. App. 522. (9) The verdict was for the right party and should not be disturbed. Under the statute and decisions all errors not materially affecting the merits of the controversy must be disregarded. Robneau v. Herrell, 213 S. W. 93; Judd v. Walker, 215 Mo. 312; Snyder v. Stemmons, 151 Mo. App. 156.

DAUES, J.—This is a suit by plaintiff, a citizen of the State of Michigan, against the defendant, a Louisiana corporation doing business in the city of New Orleans. An attachment was issued, defendant entered its appearance to the action and dissolved the attachment.

The petition is in four counts; as to the third and fourth counts plaintiff took an involuntary nonsuit after the court gave instructions as to those counts in the nature of a demurrer to the evidence. Defendant filed a general demurrer to each count of the petition, same being overruled, there was an answer which is, first, a general denial and then pleads that under defendant's charter and the law of the State of Louisiana, even if it had made the alleged contract, same would be *ultra vires* and void as to defendant. The cause was tried before the court and jury resulting in a verdict for defendant on the first count, and in favor of plaintiff for $5362.50 on the second count. Judgment duly followed and defendant appeals.

We must examine count 1 of the petition in order to pass upon count 2, upon which there was a verdict in favor of plaintiff, since the pleader has incorporated all of count 1 into count 2.

It is agreed that the first count of the petition is a contract count. As to the second count, plaintiff maintains that same is based upon fraud and deceit and therefore is *ex delicto*; defendant insists that count 2 is clearly *ex contractu*. These divergent views give rise to much of this controversy.

We will summarize the petition within expedient bounds. Count 1 recites that certain persons undertook to reclaim a tract of 7700 acres of marsh land lying within the limits of the city of New Orleans; that in February, 1906, the New Orleans & Ponchartrain Realty Company was incorporated with a capital stock of $1,500,000, paid up mostly by deeds to said lands, and that said realty company thereafter became financially involved, its chief creditor being the defendant, the Hibernia Bank & Trust Company. It is alleged that there was a mortgage on said property at that time of about $132,000, and that one Frank B. Hayne, a director of the defendant Bank & Trust Company, and Edgar H. Farrar, one of the attorneys of said bank, became interested and agreed to assume the payment of the mortgage and put up additional cash in order to secure title to said land; that the mortgage being foreclosed, said attorney bought in the property "for account of said Trust Company," same being an execution creditor, as trustee; that said attorney for defendant held the property for the benefit of the mortgagees, including Haynes and Farrar; that thereafter, in February, 1908, the New Orleans Lake Shore Land Company was incorporated with an authorized capital stock of $2,000,000; that $3000 of said capital stock was paid for in cash, and the remainder, $1,997,000, was issued to Haynes and his associates for the tract of land, same being held for them by the Trust Company as trustee. The Land Company,

it is alleged, thereafter, on March 20, 1908, issued bonds to the extent of $1,500,000, securing same by a mortgage upon the land, and afterwards pledged $500,000 of said bonds to the defendant to secure certain loans the Trust Company made to the Land Company. The Land Company purported to have employed the proceeds of such loans in clearing the land and in making improvements upon same by building roads, canals, ditches, etc.

It is then alleged that the defendant, as creditor of the Land Company, became interested in the same to the extent of $500,000, and that thereupon defendant devised a plan and scheme whereby the Land Company was to sell the property in ten-acre lots, and that with the approval and assistance of the defendant, the Land Company made efforts to sell such land "chiefly for the purpose of paying said loan to the said Trust Company;" that the Land Company was unable to sell the property. Thereupon the Land Company in December, 1913, entered into a contract with the Louisiana Company, a corporation organized by one C. W. Marsh, whereby the property was to be put on the market in small tracts, the Louisiana Company acting as selling agent for the Land Company.

The petition then sets out a resolution adopted by the Land Company, authorizing the consummation of said transaction, which resolution provided, among other things, that the loans advanced to the Land Company by the defendant Trust Company should be paid as the tracts of land were sold; that the defendant was made trustee and was required to execute deeds to the property as the purchases were completed, and that the defendant was to be indemnified against all liability in connection with said transactions.

It is then alleged that the defendant, pursuant to said scheme and resolution, entered into a written contract with the Land Company in which it guaranteed that all the terms and conditions of the said contracts of sales made with the purchasers of said groves or

tracts should be fully carried out, alleging that. said contract of guaranty is not in the possession of plaintiff and for that reason is not made an exhibit. It is then alleged that the defendant, together with its directors and the Land Company and the Louisiana Company, in order to profit thereby, put on an extensive selling campaign to sell these tracts, designated as "orange groves," and that the Louisiana Company and the Land Company, at the instance of the defendant, falsely represented, among other things, that said property was suitable for orange raising, and that the plaintiff, relying upon such representations, entered into a contract for the purchase of one of said lots, and that pursuant to such contract plaintiff made a first payment in cash and executed notes for certain further payments to cover the purchase price.

It is then charged that some of the directors of the bank were also directors in the Land Company, and that the connection between same was close and official, and that all actively co-operated with each other; and then avers "that the said defendant Trust Company, despite the fact that it had guaranteed the performance of said alleged contract of sale, as hereinabove set out, and was a party thereto, has now advised said plaintiff that the said alleged contract is impossible of performance and that it cannot be carried out; . . . that plaintiff has been damaged in the sum of $9,100 by reason of defendant's failure to carry out the terms and provisions of its said contract. . . . Wherefore, plaintiff prays for a judgment against said defendant in the sum of $9100, together with interest from the dates of the respective payments and for his costs in this behalf expended."

The second count, after adopting all the averments of the first count, alleges that plaintiff entered into an alleged contract of purchase of an orange grove lot, as described in the first count, relying upon the representations as set out in the first count, and that the de-

fendant actively participated in making such represen-
tation and "knew, or should have known by the exercise
of reasonable diligence, that said representations were
wholly false," and charges that said land and the climate
there were unsuitable for the growth of citrus fruit, and
that the representations in advertising the land for
sale were known, or should have been known, to said
defendant to have been false, and that by reason of said
false representations said alleged contract was null
and void *ab initio*. The prayer is that plaintiff has been
damaged in the sum of $9100 by reason of defendant's
failure to carry out the terms and provisions of its said
contract. So much for the pertinent parts of the petition.

The evidence discloses that the New Orleans &
Ponchartrain Realty Company was organized to reclaim
and develop this large tract of swamp land in the city
of New Orleans, Louisiana. The defendant is one of the
largest banking institutions in the South and is located
in New Orleans. There is no evidence that the bank had
any relation whatsoever with the Ponchartrain Com-
pany, or with those organizing it, but on the contrary it
affirmatively appears that there was no such relationship.

The Ponchartrain Company, after spending a con-
siderable amount of money on the project, failed. It
was then that the defendant bank bought in the property
as trustee in the mortgage sale for certain persons,
among them Haynes and Farrar. Thereupon the New
Orleans Lake Shore Land Company was organized by
Haynes, Farrar and others, to which company the de-
fendant, which held title as trustee, conveyed the land.
The Land Company issued $1,500,000 of bonds on the
property and delivered same to the bank as security
for loans it made to the Land Company. The evidence
also shows, however, that the bank held as security for the
loans to the land Company the individual guarantee of
Haynes, Farrar and those interested in the Land Com-
pany, they being men of large means and financial re-
sponsibility. It is not denied that some of the stock-
holders in the Land Company were also stockholders and
directors in the bank. The Land Company thus organ-

ized spent a large sum of money to drain and redeem the marsh for truck farming. This was not a success, and so a promotor, one C. W. Marsh, until then a stranger to the persons interested in the project, came to New Orleans and organized a corporation known as the Louisiana Company. He proposed to the Land Company that it subdivide and sell the entire tract as an orange grove proposition. There is evidence on the part of defendant that oranges were successfully grown on land near the land in question, but there is strong proof adduced by plaintiff that the land was wholly unfit for orange culture. The Land Company gave the Louisiana Company a contract by which the Louisiana Company was to receive a commission for selling the land in tracts. So far as the proof goes, there is nothing to indicate that the bank was a party to this agreement. The mortgage and the bonds on the property were cancelled and the property was to be held by the bank as security for the loans due it, but the bank was to continue to hold said guarantors on such indebtedness also. The loan to the Land Company by the bank amounted to nearly a million dollars, and was paid by the guarantors on demand, and no connection between Marsh and the bank is shown. Nor does it appear, as we read the record, that the bank ever profited a dollar by the selling of the land. Indeed, it is not contended that even Haynes and his associates profited out of these transactions. It seems they lost a tremendous sum of money in the project. The Louisiana Company, the selling agent, made large commissions for selling the land.

Much evidence is introduced on the part of plaintiff, over the objection of the defendant, tending to show that the Louisiana Company and its agents made grossly false representations orally and by letters and pamphlets to purchasers and prospective purchasers. It appears that in excess of $2,000,000 brought into the plan by the stockholders of the Land Company and by purchasers of the orange groves was all spent and lost in

the attempted development of this property. The property finally went into the hands of a receiver.

Plaintiff, at the time he made this unfortunate investment, was a Circuit Judge in the State of Michigan. He testified that his attention was called to this project by a neighbor and he went to New Orleans to look over the property; that before signing the contract he went to the defendant bank and interviewed one L. M. Poole, vice-president of the bank, and that Poole told him that the bank had a contract with the Land Company in which the bank guaranteed the performance by the Land Company of its contracts with the purchasers of the lots, but plaintiff says he did not see the contract as he was told that it was not then in the bank. Plaintiff adduced similar testimony from other grove purchasers.

Mr. Poole, on the other hand, testified for defendant that he did not tell plaintiff, or any other purchaser, or any person, that the Hibernia Bank & Trust Company had guaranteed in writing the contracts of the New Orleans Lake Shore Land Company, but that he said to such prospective purchasers, both orally and in writing, using the witness's own language, that "it was my belief that the New Orleans Lake Shore Land Company, being composed of men of standing there, would do their best to carry out the contract; that the bank could not carry it out because it was beyond their power to do so. . . . If any of these men asked me a question, and I have no doubt they did, I was very plain in explaining to them that the bank had no power under its charter to guarantee an orange grove, but it did have the land in its name as trustee and would deliver that land to them when they paid for it."

Mr. Haynes testified for defendant that he as a stockholder of the Land Company lost $600,000 and never received a cent out of the project, directly or indirectly, and that more than $2,000,000 was spent in the development of the property, and that all the grove owners' and the stockholders' money, except the commissions to

the Louisiana Company, went into the property, and this does not seem to be contradicted.

The record evidence consumes a volume of over 400 pages, but the above is a sufficient summary, we think, for the present.

At the close of the case, the court gave a peremptory instruction to find for the defendant on the first count, on the theory as is there disclosed, to-wit:

"The court instructs the jury that it is beyond the power of a bank and trust company, organized under the laws of Louisiana, to guarantee the performance of a contract made by another corporation with a third person, which contract obligates said other corporation to plant and cultivate for five years a commercial orange and grape fruit grove, and to deliver same at the end of five years to said third person, and your verdict must be for the defendant on the first count of plaintiff's petition."

The assignments of error are, first, that plaintiff's given instruction, which we designated No. 1, is erroneous in that it submitted an issue not comprehended within but denied by the petition; that the instruction submitted an issue *ex delicto* on a petition purporting to state a cause of action *ex contractu;* and, second, that count 2, upon which the case went to the jury, failed to state a cause of action either in tort or contract. Other assignments go to the misreception of evidence and the court's ruling on the right to amend the answer. Appellant also strongly relies upon the court's refusal to apply the doctrine of *ultra vires*.

As said, it is contended by appellant that the second count states a cause of action for fraud and deceit, while defendant maintains that if it states a cause of action at all it is one for breach of contract and not for fraud.

Plaintiff's instruction complained of proceeds upon the theory that the defendant did not make and execute the written contract of guarantee by which defendant guaranteed the performance of the contract of sale be-

tween the Land Company and the plaintiff; that no such written guarantee was in fact executed by the defendant, but that the defendant, by its vice-president in his official capacity, "falsely and fraudulently and with intent to deceive plaintiff represented to plaintiff that the defendant company had entered into a written contract with said Land Company whereby defendant company specifically guaranteed that all the terms and conditions of the contract of sale between plaintiff and the said Land Company, if entered into, would be fully carried out by said Land Company, etc."

It is somewhat difficult to adjust count 2 when count 1 is added to same, but it appears to state a cause of action on contract. Count 1 contains much by way of inducement, and then sets out *in haec verba* the contract of purchase between the plaintiff and the Land Company; charges that defendant entered into a contract with the Land Company whereby the defendant guaranteed that each purchaser of an orange grove would receive what was represented to be sold under the contract, to-wit a commercial orange grove. It then states that the contract or guarantee between the defendant and the Land Company is not in plaintiff's possession, and for that reason is not made an exhibit; alleges that the plaintiff was induced to enter into his contract of purchase with the Land Company because of the representations made as to the suitability of the property for orange culture, and that such contract of purchase was breached and that damage resulted, for which judgment is prayed. This count contains the following averment: "That the said defendant Trust Company, despite the fact that it had guaranteed the performance of said contract of sale and was a party thereto, has now advised plaintiff that the alleged contract is impossible of performance and cannot be carried out." In so far as count 1 is concerned, there is no allegation that the contract of guaranty which it is alleged was entered into was violated by the defendant bank, or that the damages occasioned to plaintiff grows out of such.

Now, the second count, after adopting the averments of count 1, alleges that plaintiff entered into the contract of purchase solely upon the representations set out in the first count. The representations referred to are those which count 1 alleges induced plaintiff to enter into the contract of sale, so that in fact the only difference between the two counts is that in the second count there is an averment that these alleged representations were false, and that the defendant "knew, or should have known of their falsity." Count 2 does not seek to recover damages for fraud, but avers that plaintiff has been damaged by reason of the defendant's failure to carry out its contract.

Plaintiff's instruction, as pointed out, hypothesizes an entirely different state of facts from the allegations of the petition. Under a long line of cases in our Supreme Court, the leading case being State ex rel. v. Ellison, 270 Mo. 645, 195 S. W. 722, it is established that an instruction cannot be broader than the pleadings, nor broader than the facts proven; it must be within the purview both of the pleadings and the evidence. [See: Karte v. J. R. Brockman Mfg. Co., 247 S. W. 417.] The instruction here is broader than the petition and submits an issue not raised by the petition and for that reason, if for no other, this judgment cannot be permitted to stand.

Counsel for defendant make the argument that count 2 fails to state a cause of action either *ex delicto* or *ex contractu*. Considering respondent's motion that it states a cause of action for fraud and deceit, it is pointed out that this count fails to allege the necessary allegation in a tort action for fraud and deceit, to-wit *scienter;* it being the allegation of the petition "that the said defendant herein at the time of making such representations actually participated therein and knew, or should have known by the exercise of reasonable diligence, that the said representations were wholly false." In other words, the averments being that the bank made state-

ments that in the exercise of ordinary care it should have known were false. However, be that as it may, we now consider the chief question in the case, and that is the trial court's treatment of the doctrine of *ultra vires.*

Reverting somewhat to the evidence: Plaintiff, a lawyer of wide experience, testified that L. M. Poole, vice-president of the defendant bank, told him there was a written contract by which the bank guaranteed the performance of the sale contracts of the Land Company. The trial judge held on count 1 that if there was such a contract between the bank and the Land Company it was *ultra vires* the bank, and that under this count no recovery could be had, the bank not having profited by the contract. But the court at the same time held that if the bank's vice-president, Poole, falsely represented that there was such a contract of guaranty, then the bank would be liable for such vice-president's statement on the second count of the petition.

The law of *ultra vires* in the State of Louisiana, it seems, conforms to the rule of this State and is in accordance with what is the rule in most jurisdictions.

Joseph W. Carroll, of the Louisiana State Bar, testified as an expert on the law in Louisiana. He testified that the latest decision on the law of *ultra vires* in that State was the case of Interstate Bank v. Reynolds, 127 La. Rep. 193; that the Louisiana law in this respect is the same as that announced by the U. S. Supreme Court in Central Transp. Co. v. Pullman Co., 139 U. S. 24, and Bank v. Kennedy, 167 U. S. 362; that the limit of the remedy of the other party to an *ultra vires* contract is to receive back the consideration actually received by the corporation making the *ultra vires* contract, and that such party is not entitled to enforce the contract or to receive damages for a breach thereof. If the corporation making such contract receives nothing, nothing can be recovered from it. This witness offered several decisions of the Supreme Court of that State in support thereof.

Plaintiff recovered this judgment on the proposition that one of the officers of the bank told the plaintiff that a contract of guaranty existed, a contract which in fact did not exist. If the bank cannot be held upon the contract of guaranty as being *ultra vires,* assuming that a contract had actually been made, can the bank be held liable when no contract is made, but because an officer falsely stated that the bank had entered into such contract? If the bank through its duly constituted board had no authority to bind the bank on such contract, same concededly being beyond the scope of the bank's business, how can it be held that the bank is liable because of the false representations made by one of its vice presidents that such *ultra vires* contract was executed? In other words, if plaintiff ought to recover from the bank at all, it would be for the fraudulent representations of Poole that the bank had made a contract of guaranty, a contract plainly and manifestly beyond the scope of the bank's business. Now, if plaintiff could not recover from the bank on such contract, if made, he certainly cannot recover from the bank on the basis that Poole falsely represented that such *ultra vires* contract had been made. It is hardly necessary to say that the bank possesses only those powers which the charter of its creation either expressly confers upon it or which are incidental to its existence.

In Farmers and Merchants National Bank v. Smith, 77 Fed. 129, the U. S., Circuit Court of Appeals said, through our late Judge THAYER:

"No act done by an officer of an incorporated company in furtherance of a business venture which is outside of the company's corporate powers can be said to be an act which is within the scope of the apparent or customary powers of such officer, and to be binding upon the corporation for that reason."

That case further points out that a bank may well be held responsible to a third party for an act done by its cashier in the prosecution of the legitimate busi-

ness of his powers, although it was in fact unauthorized by the corporation, but the unauthorized act of the bank's agent must at least have the appearance of being within the scope of the bank's business. Judge Tucker, the plaintiff, under the circumstances of this case, cannot be allowed to indulge in any presumptions as to the authority of the bank's vice-president. He was advised by the very nature of the transaction that what Poole said the bank had done by contract of guaranty was beyond the power of the bank.

In Interstate Trust & Bank Co. v. Reynolds, supra, it is held that a bank, organized under the laws of Louisiana, is not only utterly without capacity to enter into a contract of partnership with individuals for building levees, but that it is prohibited by the State Constitution from doing so, and that no such contract is enforceable because the bank could never have been a party to same. This case quotes from Central Transp. Co. v. Pullman Co., 139 U. S. 24, as follows:

"The view which this court has taken of the question presented by this branch of the case, and the only view which appears to us consistent with legal principles, is as follows: A contract of a corporation which is *ultra vires,* in the proper sense, that is to say, outside the object of its creation, as defined in the law of its organization, and therefore beyond the power conferred by the Legislature, is not voidable, only, but wholly void and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity or be the foundation of any right of action upon it."

In Robert Gair Co. v. Columbia Rice Packing Co., 124 La. 193, a like ruling is made. Many cases are cited as authorities for the rule that a corporation in Louisiana possesses only those powers which its charter con-

fers either expressly or by implication and that con-
tracts made beyond the scope of the corporation's ex-
press or implied powers are void.

Under the charter of the bank, and under the laws
of the State of Louisiana creating same, the Bank and
Trust Company is limited to powers usually incidental
to banks and trust companies, to-wit the right and power
to accept deposits, loan money, act as trustee, guardians
of minors and executors of wills, and limits the powers
to holding real estate to that necessary to other powers
and to that mortgaged to them as security for a loan
and that taken to collect debt. The Constitution of
Louisiana, article 265, provides that : "No corporation
shall engage in any business other than that expressly
authorized in its charter and incidental thereto."

But learned counsel for plaintiff say defendant en-
deavored to collect a debt and cannot invoke the defense
of *ultra vires*, and, further, that corporations cannot es-
cape liability for torts on the ground of *ultra vires* acts.

In the view we take of the petition and the evidence,
there is nothing tenable in this positon. We, of course,
recognize the rule that where a corporation receives
money of another under a duty to account therefor, it
may be compelled to perform such duty though the trans-
action is *ultra vires*. As said in 7 Ruling Case Law,
679, "The obligation to do justice rests upon all per-
sons, natural and artificial; if one obtains the money or
property of others without authority, the law indepen-
dently of express contract, will compel restitution or
compensation."

In the instant case there is nothing for the bank to
pay back on the alleged *ultra vires* contract or on the
acts of its agent, Poole. The principle of restitution of
property is not present in this case. We again say we
find nothng in the evidence from which it can be ad-
judged that the bank committed a tortious act for which
it is liable to plaintiff. We do not believe the bank
is estopped, under the fact and circumstances of this

case, from setting up the defense of *ultra vires*. [See: California Bank v. Kennedy, 167 U. S. 362; First National Bank v. Converse, 200 U. S. 425; Central Transp. Co.. v. Pullman Co., 139 U. S. 24.]

One branch of this litigation has already run its course. A suit was brought against this bank by a purchaser of one of these lots, on the contract of sale between the Land Company and the purchaser. The case arose in the United States District Court at New Orleans. The bank prevailing in the lower court, the plaintiff appealed to the United States Circuit Court of Appeals, where that court affirmed the decision of the district court, and held that the contract of purchase did not give a cause of action to the purchaser against the bank, the court concluding its opinion with the statement that the evidence shows that the entire contract was between the grove purchaser and the Land Company, and that the bank was merely a trustee which accepted the agreement solely to signify that it would convey the land to the purchaser when the land was paid for by the purchaser under his contract. [See: White v. New Orleans Lake Shore Land Co., 269 Fed. 937.]

We have confidently reached the conclusion, after mature reflection, that the judgment herein should be reversed outright. It is so ordered. *Allen, P. J.,* and *Becker, J.,* concur.